**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0526n.06

No. 19-1176

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JACQUELINE HARRISON, | ) | **FILED** |
| Plaintiff-Appellant | ) | Sep 10, 2020 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| SOAVE ENTERPRISES L.L.C. and PARTS | ) | UNITED STATES DISTRICT |
| GALORE L.L.C. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendants-Appellees | ) | |

**Before: GUY, BUSH, and MURPHY, Circuit Judges.**

**JOHN K. BUSH, Circuit Judge.** The Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, celebrating its thirtieth anniversary this year, embodies our national commitment to equality of opportunity in the workplace for the disabled. This appeal concerns the definition of a qualifying "disability" in light of the 2008 amendments that broadened coverage under the Act.

Jacqueline Harrison appeals the district court's grant of summary judgment to Soave Enterprises and Parts Galore (collectively, Defendants) on her ADA claim. The district court held that Defendants might be "employers" subject to the requirements of the Act but granted them summary judgment on the ground that Harrison failed to introduce direct evidence that she was either "actually" disabled or "regarded as" disabled by those entities. We conclude that a dispute of fact exists over whether Soave and Parts Galore can be liable to Harrison under the ADA, and we disagree with the district court's conclusion that Harrison failed to adduce sufficient evidence

of an "actual" or "regarded-as" disability under the 2008 amendments to the ADA, known as the ADA Amendments Act of 2008 (ADAAA). We thus **REVERSE** the district court's grant of summary judgment and **REMAND** for the district court's assessment of the remaining elements of Harrison's ADA claim.

## I.

In December 2005, Harrison became a manager of Parts Galore, a self-service used auto parts salvage yard. In 2007, she moved to a second location, "Parts Galore II," where she also served as a manager. At these facilities customers can pay a two-dollar entrance fee, which allows them to harvest and purchase parts from scrap cars and trucks located throughout many acres. Harrison inspected the yard two to three times a day in a John Deere "Gator" vehicle. As part of those inspections, she checked for improperly placed cars, monitored employees, and assessed holes in the fence to help prevent theft.

In 2014, Parts Galore hired Stephan A. "Tony" Murell as Regional Manager. He prepared a preliminary report that documented problems at Parts Galore II. The underperformance at the facility included holes along the fence (linked to possible incidents of theft), poorly inspected vehicles (with dangerous parts (*i.e.*, jacks) not having been removed), slacking employees, and a deficient video feed monitor.

Following the report, Murell mandated changes at Parts Galore II. Among other things, he required Harrison to randomly spot-check five cars each day prior to their placement in the yard. This was to ensure that all dangerous car parts had been properly removed. To conduct the spot checks, Harrison had to look under each car's hood and ensure that all of the engine fluids had been drained, and then inspect beneath the vehicles to confirm the removal of the catalytic

converters. The latter duty required Harrison to physically kneel down and view the underbelly of the car.

The new inspection procedure posed difficulties for Harrison, for in 2010 or 2011, Harrison had suffered a torn ACL injury after falling in the shower. Knee surgery repaired her torn meniscus, but she elected not to have her ACL repaired, as it would have required her to stop taking medication that she needed and her doctor informed her that she could function without the additional repair. Following her surgery Harrison continued to experience pain, which she managed by taking medication as needed. However, she was no longer able to kneel to look beneath the cars to perform the daily spot-check inspections.

To address Harrison's inability to kneel, Parts Galore supplied her with a mirror on an extension arm, which she used to view the undercarriage of cars and confirm that the catalytic converter had been removed. The mirror allowed Harrison to perform all of her work-related duties without any limitation. Harrison also testified that she could perform many personal activities around her home and neighborhood. These included window washing, floor scrubbing, cleaning toilets, picking up parts, picking up batteries, participating in the community, cleaning up neighborhoods, and delivering turkey. Harrison never requested any other accommodation to perform her duties at Part Galore. In fact, she declared in her deposition that "[t]here was no part of my job that I could not do." She also testified that at the time of her termination of employment (August 26, 2015), she was neither being treated for her ACL injury by a medical professional, nor had any doctor-imposed medical or physical restrictions on her activities.

### A. Harrison's Termination

On her last day at Parts Galore, Murell indicated to Harrison that she was being "terminated because [she] can no longer do [her] duties because [of] a torn ACL." Murell offered no other

reason for the termination. In his deposition Murell admitted that he had told Harrison that her ACL injury was the reason for her termination, but claimed that the actual reasons her employment ended, which he did not tell her, were because of a "multitude of [her prior] offenses and incidents of behavior."

### B.      Procedural History

#### 1.   Harrison's EEOC Complaint

Following her termination, Harrison filed a charge with the Equal Employment Opportunity Commission (EEOC) against Ferrous Processing and Trading Company, the party responsible for her hiring at Parts Galore. She alleged that she was fired because of her race, sex, and/or disability. Neither Soave nor Parts Galore was named on this complaint. The EEOC issued Harrison a right-to-sue letter.

#### 2.   District Court Proceedings

Harrison then filed a two-count complaint in the Eastern District of Michigan against Soave and Parts Galore. In Count I, Harrison alleged that her termination violated the ADA, classifying her torn ACL and "medical obesity" as qualifying disabilities. In Count II, Harrison alleged that Soave had violated the Elliott-Larsen Civil Rights Act (ELCRA), based on its alleged weight discrimination against her. Central to Harrison's claims was the statement Murell had made that she "[could] no longer perform [her] managerial duties because [of a] torn ACL."

Upon completion of discovery, Defendants moved for summary judgment on both counts. They argued that (1) Harrison was directly employed by neither Soave nor Parts Galore; (2) she was not a qualified person with a disability under the ADA; (3) she had not required, nor had she requested, a reasonable accommodation for her alleged disability, which rendered her ADA claim

moot; and (4) her deposition admissions (relating to the fact she was never diagnosed as medically obese) rendered her ELCRA claim moot.

The district court granted summary judgment for Defendants. The court concluded that Ferrous, Parts Galore, and Soave were "so intertwined that they constitute[d] a single employer" under the ADA and thus Parts Galore and Soave were capable of being named in the complaint. *Harrison v. Soave Enters.*, No. 16-14084, 2019 WL 296699, at *2 (E.D. Mich. Jan. 23, 2019) (citing *Swallows v. Barnes & Noble Book Stores*, 128 F.3d 990, 993 (6th Cir. 1997)). Nonetheless, the court granted summary judgment for several reasons. First, the court held that Harrison had failed to present medical evidence of her knee condition as to create a genuine issue for trial that she was either "actually disabled" or "regarded as" disabled under the ADA. *Id.* at *3. Second, the court held that, even if Harrison had alleged a sufficient disability, she "extinguish[ed] any potential claim of [her employer's] refusal to accommodate," given that she advanced "[no] evidence that Defendants refused [her] requested accommodation." *Id.* Third, although the court concluded that Harrison had evidence for a prima facie case of weight discrimination under the ELCRA, the court held that she failed to offer any proof that Murell's legitimate rationale for her firing—Harrison's inconsistency in performing car spot checks—was pretextual. *Id*. at *4.

Harrison now appeals only her ADA claim. She argues that, in concluding that she was not disabled under the ADA, the district court incorrectly applied an analysis from *Black v. Roadway Express, Inc.*, 297 F.3d 445, 450 (6th Cir. 2002), which has been superseded by the 2008 amendments to the ADA. Harrison further contends that the district court erred in its determination that she failed to prove that Defendants "regarded" her as disabled and terminated her because of that perception. Alternatively, Harrison argues that even if her claim based on direct evidence of discrimination fails, the district court failed to conduct burden-shifting analysis based on indirect

evidence. *See Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891–92 (6th Cir. 2016), abrogated on other grounds by *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 319 (6th Cir. 2019) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

## II.

We review de novo a district court's grant of summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Chen v. Dow Chem. Co*., 580 F.3d 394, 400 (6th Cir. 2009). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard, the moving party "bears the initial burden of establishing an absence of evidence to support the non[-]moving party's case." *Copeland v. Machulis*, 57 F.3d 476, 478–79 (6th Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Here, Defendants bear this burden as the parties moving for summary judgment. If they meet their burden of production, the burden shifts to the non-moving party, to advance "significant probative evidence tending to support the complaint." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citation omitted). We assess "the facts and any inferences [that can be] drawn from the facts in the light most favorable to the non-moving party." *Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (en banc).

## III.

### A.     Harrison's Employers

Parts Galore and Soave first argue that neither entity was an employer of Harrison, and therefore neither may be held liable for her employment-related claims. The district court rejected this argument, stating that although Harrison testified that neither Parts Galore nor Soave Enterprises was her employer, "companies can be so intertwined that they constitute a single

employer." *Harrison*, 2019 WL 296699, at *2. On appeal, Parts Galore and Soave Enterprises argue that the evidence of corporate interwovenness cited by the district court was not enough to allow a reasonable jury to find that those companies were also subject to liability given her admission that she was employed only by Ferrous. We disagree.

Harrison testified only as to which business she considered to be her formal employer. However, neither the ADA's plain language nor our precedent limits liability solely to such formal employers. Start with the statutory text. It states that no "*covered entity* shall discriminate against a qualified individual on the basis of disability" in various terms and conditions of employment. 42 U.S.C. § 12112(a) (emphasis added). The ADA defines "covered entity" to include "an employer." *Id.* § 12111(2). And it defines "employer" as a "person engaged in an industry affecting commerce" with a certain number of employees as well as "any agent of such person." *Id.* § 12111(5)(A). Nowhere does this statutory text require the "covered entity" that engages in the illegal discrimination to be the formal employer of the disabled individual who is subjected to the discrimination. *Cf. Carparts Distribution Ctr., Inc. v. Automotive Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 16–18 (1st Cir. 1994).

Likewise, our case law has noted that an "employer" under the ADA is not always limited to the company with whom the aggrieved employee has a direct employment relationship. *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997) (noting that there can be circumstances in "which a defendant that does not directly employ a plaintiff may still be considered an 'employer' under [the ADA]"). In these situations, we follow three approaches to examine whether two companies constitute one employer. *Id.* Under the first, we examine "whether two entities are so interrelated that they may be considered a 'single employer' or an 'integrated enterprise.'" *Id.*; *see, e.g.*, *York v. Tenn. Crushed Stone Ass'n,* 684 F.2d 360 (6th Cir.

1982). The second approach "consider[s] whether one defendant has control over another company's employees sufficient to show that the two companies are acting as a 'joint employer' of those employees." *Swallows*, 128 F.3d at 993; *see, e.g.*, *Carrier Corp. v. NLRB*, 768 F.2d 778 (6th Cir. 1985). The third addresses "whether the person or entity that took the allegedly illegal employment action was acting as the agent of another company, which may then be held liable as the plaintiffs' employer." *Swallows*, 128 F.3d at 993; *see, e.g.*, *Deal v. State Farm Cnty. Mut. Ins. Co. of Tex.*, 5 F.3d 117 (5th Cir. 1993).

We conclude that a reasonable jury could find that Soave and Parts Galore are subject to liability under this framework. Among other evidence concerning the relationship between the entities, the individuals who were involved in the decision to terminate Harrison (and thus who engaged in the alleged "discriminat[ion] against" her, 42 U.S.C. § 12112(a)) actually worked for Parts Galore or Soave, not Ferrous. Tony Murell, the primary person who made the decision to fire Harrison, was employed by Parts Galore. *See Harrison*, 2019 WL 296699, at *3. And Marcia Moss, who was present with Murell during Harrison's termination, was employed by Soave as its Human Resources Director. *See id.* Soave and Parts Galore make no claim that they do not otherwise qualify as "employers" under the relevant statutory definition (which requires that they be engaged in an industry affecting commerce and have the required number of employees). *See* 42 U.S.C. § 12111(5)(A). And the definition of employer encompasses an employer's "agent"— like Murell and Moss for Parts Galore and Soave, respectively. While Soave argues that Moss had no role in the actual termination decision, a dispute of fact exists on that issue. And a factual dispute exists over whether the different entities are "so interrelated" that they would be considered a "single employer" or "integrated enterprise." We therefore hold that Soave and Parts Galore are potentially subject to liability under the ADA.

### B.    Qualifying Disabilities

To prevail on a claim of discrimination under the ADA, a plaintiff must show that she "(1) is disabled, (2) [is] otherwise qualified to perform the essential functions of the position, with or without accommodation, and (3) suffered an adverse employment action because of…her disability." *Ferrari*, 826 F.3d at 891.

At issue in this appeal is the first element.  Under this element, a plaintiff can prove a qualifying "disability" by demonstrating that she (1) is "actually disabled," meaning the individual possesses "a physical or mental impairment that substantially limits one or more major life activities of such individual"; (2) has "a record of such an impairment"; or, (3) is "regarded as having such an impairment."  42 U.S.C. § 12102(1), (3).

Harrison pursues the first and third avenues of element one—that she is "actually disabled" or that she was "regarded" by Defendants "as having such an impairment."  *Id.* § 12102(1), (3). The district court found Harrison's evidence insufficient to create a jury issue under either approach.  However, in doing so, the district court erroneously relied on *Black v. Roadway Express, Inc.*, 297 F.3d 445, 450 (6th Cir. 2002), which applied a stricter standard for establishing disability that no longer governs following the 2008 amendments to the ADA.

### 1. "Actually Disabled" under Section 12102(1)(A).

To prove that she is "actually disabled" under § 12102(1)(A), a plaintiff must show "a physical or mental impairment that substantially limits one or more major life activities."  The statute enumerates a non-exhaustive list of "major life activities," which include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and

working." 42 U.S.C. § 12102(2)(A). And, importantly, in accordance with the directives offered by the Code of Federal Regulations, this court has held that "the term 'major' shall not be interpreted strictly to create a demanding standard." *Hostettler v. Coll. of Wooster,* 895 F.3d 844, 853 (6th Cir. 2018) (quoting 29 C.F.R. § 1630.2(i)(2)). We adopted this less-strict interpretation because, "[i]n keeping with the remedial purposes of the ADAAA, '[t]he definition of disability' under the ADA 'shall be construed in favor of broad coverage.'" *Id.* (quoting 42 U.S.C. § 12102(4)(A)). "That is because the primary concern of the ADA is 'whether covered entities have complied with their obligations and whether discrimination has occurred,' not whether an individual's impairment is a disability." *Id.* (quoting 29 C.F.R. § 1630.2(j)(1)(iii)).

Under the applicable ADA regulations, we "determine whether a disability substantially limits major life activities" through comparison of "the person claiming a disability to 'most people in the general population.'" *Id.* (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). "'An impairment need not prevent, or significantly or severely restrict . . . a major life activity' to be substantially limiting." *Id.* at 853–54 (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). Similar to the term "major life activities," "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." *Id.* at 854 (quoting 29 C.F.R. § 1630.2(j)(1)(i)).

Indeed, a plaintiff need not show that her disability renders her unable to work, *see Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 300 (6th Cir. 2019), and a plaintiff need not even tell her employer about her specific diagnosis. *See id.* Rather, it is enough that a plaintiff simply tells her employer that she has certain limitations in relation to her work "because she suffer[s] from a disability as defined by the ADA." *Id.* ("[Plaintiff] told [her employer] that she could not work more than twelve hours per shift because she suffered from a disability as defined by the ADA. That was enough."); *see also Hammon v. DHL Airways, Inc.,* 165 F.3d 441, 450 (6th

Cir. 1999) ("An employer has notice of the employee's disability when the employee tells the employer that he is disabled." (citation omitted)); *Cady v. Remington Arms Co*, 665 F. App'x 413, 417 (6th Cir. 2016) ("[T]he employee need not use the word 'disabled,' but the employer must know enough information about the employee's condition to conclude that he is disabled. Relevant information could include, among other things, a diagnosis, a treatment plan, apparent severe symptoms, and physician-imposed work restrictions." (internal citation omitted)).

Therefore, framed properly in light of post-2008 ADA law, "the question before us is whether [Harrison] submitted enough evidence to show that she is substantially limited in her ability to [kneel or walk]." *Morrissey*, 946 F.3d at 300. And, ultimately, based on our case law that properly applies the post-2008 ADA standards for disability, we conclude that Harrison has sufficient evidence to allow a reasonable jury to find "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).

In *Morrissey*, for instance, we concluded that the plaintiff had submitted enough evidence to show that she was substantially limited in her ability to walk, stand, lift or bend, even with her admission that she "did not have a specific limitation on the distance she could walk, the amount of time she could stand, the amount of bending she could do, or the amount of weight she could lift." 946 F.3d at 300. It was enough that plaintiff alleged that, "after an eight-to twelve-hour shift, she had *difficulty* walking, standing, lifting and bending," and "she had so much trouble bending over that it was *difficult* to put on her underwear." *Id.* (emphasis added). We also found significant that plaintiff's daughter submitted an affidavit in which she stated that her mother "did not walk at all or walked with a slight hunch and a pained expression after completing a day of work." *Id.*

Similarly, in *Hostettler,* we concluded that plaintiff had sufficiently shown that her mix of postpartum depression and separation anxiety, which impeded her ability to work full-time and required her to ask for a modified work schedule from her employer, constituted a "disability" under the post-2008 ADA. 895 F.3d at 853–54. In doing so, we dismissed defendant's contention that because plaintiff's panic attacks were limited to several minute spans at a time, they did not substantially limit any major life activity. *Id.* at 854. Instead, we found the episodic nature of the disability to "make[] no difference under the ADA," as "long as the impairment 'would substantially limit a major life activity when active," *id.* (quoting 42 U.S.C. § 12102(4)(D)); and in that case, the attacks substantially limited plaintiff's ability to "care for herself, sleep, walk, or speak, among others." *Id.*; *see* 42 U.S.C. § 12102(2).

Under the directives of our case law and based on the regulations that direct us to construct the term "substantially limits" "broadly in favor of expansive coverage," 29 C.F.R. § 1630.2(j)(1)(i), we conclude that Harrison has satisfied the first element of a prima facie case of disability discrimination under the ADA. First, Harrison has shown that she has a "physical . . . impairment." 42 U.S.C. § 12102(1)(A). Namely, Harrison presented evidence that in 2010 she suffered an injury to her right knee in the shower, resulting in a damaged meniscus and torn ACL. Thereafter, Harrison was required to have surgery on her meniscus, though she elected not to have her ACL repaired, as it would have required her to stop taking medication that she needed and her doctor informed her she could function without the surgery. The meniscus surgery required her to take two days off of work, undergo a full treatment of physical therapy, and be under the short-term supervision from a physician. These circumstances qualify Harrison's knee injury as a physical impairment under the ADAAA. *See* 42 U.S.C. § 12102(4)(A); *Barlia v. MWI Veterinary Supply, Inc.*, 721 F. App'x 439, 445 (6th Cir. 2018) ("Congress amended the ADA in 2008 to state

that the term [disability] should be construed 'in favor of broad coverage . . . , to the maximum extent permitted by the [ADA's] terms.'" (quoting 42 U.S.C. § 12102(4)(A)).

Second, similar to our evaluation of the plaintiffs' evidence in *Hostettler* and *Morrissey*, we conclude that Harrison has sufficient proof to show that her physical impairment "substantially limits" a major life activity. 42 U.S.C. § 12102(1)(A), (2)(A). Namely, Harrison testified categorically that because of her torn, unrepaired ACL, she cannot kneel to this day. Indeed, the record shows that she was unable to kneel to look under cars, so she was provided a mirror for her to undertake this task. The statute provides a non-exhaustive list of "major life activities," including "standing, lifting, [and] bending," 42 U.S.C. § 12102(2)(A), and regulations add "sitting" and "reaching" as additional examples, 29 C.F.R. § 1630.2(i)(1)(i). Kneeling fits comfortably within this list. Moreover, a reasonable juror could determine that the majority of the general population can kneel and does not share Harrison's physical limitation. 29 C.F.R. § 1630.2(j)(l)(v) ("The comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis."). Therefore, because Harrison's physical impairment—her knee injury—"substantially limits one or more major life activities," the district court erred in holding as a matter of law based on the record as it stands that Harrison was not "actually disabled" under § 12102(1)(A). There is a genuine dispute regarding whether she was "actually disabled" under § 12102(1)(A), which necessitates our reversal of the district court's summary judgment based on this issue.

**2. "Regarded As" Disabled under Section 12102(1)(C).**

Harrison also has sufficient evidence for a reasonable jury to find that she has a qualifying ADA "disability" under the "regarded as having [] an impairment" by her employer prong, *see* 42 U.S.C. § 12102(1)(C)), given Defendants' knowledge of her knee injury.

Through the 2008 amendments, Congress liberalized the "regarded as having an impairment" avenue of proving a disability under § 12102. Prior to the 2008 amendments, a plaintiff was required to show that her employer (1) "mistakenly believe[d] that [she] ha[d] a physical impairment that substantially limits one or more major life activities" or, alternatively, that the employer (2) "mistakenly believe[d] that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999); *accord Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 704 (6th Cir. 2008). Under both scenarios, it was "necessary that [an employer] entertain misperceptions about the individual;" or in other words, the employer had to "believe either" that the employee "ha[d] a substantially limiting impairment that [she] [did] not have or that [she] ha[d] a substantially limiting impairment when, in fact, the impairment is not so limiting." *Sutton*, 527 U.S. at 489; *accord Daugherty*, 544 F.3d at 704. However, in 2008, Congress deliberately relaxed the standard "because it believed that *Sutton* (among other Supreme Court decisions) unduly 'narrowed the broad scope of protection intended to be afforded by the ADA,'" and thereby "eliminat[ed] protection for many individuals whom Congress intended to protect." *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 318 (6th Cir. 2019) (quoting ADA Amendments Act of 2008, Pub. L. 110-325, § 2(a)(4), 122 Stat. 3553 (2008)). Accordingly, the "regarded as" provision of the ADA now states that, for an employee to make out a "regarded as" claim, the employee must establish: "that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or

mental impairment *whether or not the impairment limits or is perceived to limit a major life activity.*" 42 U.S.C. § 12102(3)(A) (emphasis added). There is a limitation to this provision, however: "regarded as" impairments "shall *not* apply to impairments that are *transitory and minor.*" *Babb*, 942 F.3d at 319 (quoting 42 U.S.C. § 12102(3)(B) (emphasis added)). Therefore, the "transitory and minor" limitation acts as an affirmative defense of which the employer bears the burden of proving. *Id.*

Ultimately then, "to state the threshold condition of a 'regarded as' ADA claim, an employee need only show that [her] employer believed [she] had a 'physical or mental impairment,' as that term is defined in federal regulations." *Id.* "The employer may then rebut this showing by pointing to objective evidence 'that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment) both transitory and minor.'" *Id.* (quoting 29 C.F.R. § 1630.15(f)); *see Baum v. Metro Restoration Servs., Inc.*, 764 F. App'x 543, 547 (6th Cir. 2019); *Neely v. Benchmark Family Servs.*, 640 F. App'x 429, 435 (6th Cir. 2016); *Bailey v. Real Time Staffing Servs.*, 543 F. App'x 520, 523 (6th Cir. 2013).

Applying the clarified "regarded as" standard to Harrison's case, we conclude that a genuine dispute of material fact exists with respect to Harrison's perceived disability, and her employer's perception of such. The record indicates that Harrison's employers knew about her injury because: (1) when requesting the accommodation for her injury—the mirror—Harrison referenced her ACL injury to validate the request; and (2) during her firing, Murell referenced Harrison's ACL injury. This is more than enough evidence from which a reasonable juror could find that in December 2015, Defendants genuinely believed that Harrison had a knee injury that affected her ability to kneel and work—therefore, representing a disability that we deem would qualify as a "physical impairment" under the ADA given it affected Harrison's "musculoskeletal"

system. 29 C.F.R. § 1630.2(i)(1)(ii). Furthermore, given that Harrison testified that she injured her knee in 2011, the five-year span between the injury and her termination suggests that the impairment was neither "minor" nor "transitory." 29 CFR § 1630.15(f). Although Defendants highlight that (1) Harrison could perform other household tasks and (2) Harrison testified that she had no other limitations across other activities, these facts do not necessarily rebut the notion that Harrison's employers still could have "perceived" her "as having an impairment" and fired her because of that perceived limitation. This is particularly true, given the updated standard under the ADA, which no longer requires the employer to believe the "impairment limits…a major life activity." 42 U.S.C. § 12102(3)(A).

In light of the above, we hold, in the alternative, that Harrison has sufficient evidence for a reasonable jury to find that she satisfied the "regarded as" avenue of a qualifying ADA disability.

**IV.**

We conclude that a reasonable jury could find that Parts Galore and Soave are liable to Harrison under the ADA. And given our holdings that Harrison has presented sufficient evidence to create a genuine dispute of material fact regarding whether she is "actually disabled" or "regarded as" disabled under § 12102(1)(A) and (C), we **REVERSE** the district court's grant of summary judgment in favor of Defendants. Therefore, we **REMAND** this case for further proceedings consistent with this opinion.