NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0529n.06

Case No. 23-3242

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Dec 18, 2023

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| HEIDI REAMS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| INTERNATIONAL UNION OF OPERATING | ) | |
| ENGINEERS, LOCAL 18, | ) | |
| | ) | O P I N I O N |
| Defendant-Appellee. | ) | |

Before: SILER, NALBANDIAN, and DAVIS, Circuit Judges.

**NALBANDIAN, Circuit Judge.** Heidi Reams worked as a Clerk for the International Union of Operating Engineers, Local 18 branch in Toledo. Her primary job duties included handling and recording financial transactions between members and the Union. Undisputed evidence shows that her time as a Clerk was speckled with mistakes ranging from miscalculating members' fees to mishandling money paid by members. In 2019, Reams suffered a carotid artery injury during an unfortunate visit to a chiropractor. This kept her out of work for nearly a month. While she was out, the Union discovered a $142.57 discrepancy on the books that she handled. The Union informed Reams it was terminating her employment the day after she returned to work. According to the Union, it fired Reams because of her mounting financial mistakes. Reams believes she was fired because of her disability, so she sued the Union.

The trial court granted summary judgment to the Union, finding that Reams had not created a genuine issue of fact on whether the Union's proffered reason was pretextual. We agree and AFFIRM.

## I.

### A.

First, a bit of background. The International Union of Operating Engineers is a labor organization representing operating engineers. The Local 18 branch of the Union hired Heidi Reams as an Office Clerk in 2016. Her job duties included handling various financial transactions for the branch, like collecting dues from members, ensuring that each member was being charged the appropriate amount, collecting and recording initiation fees, and making sure dues were paid on time, which required informing members of upcoming payments. These transactions were recorded on a "cash sheet," a spreadsheet used to keep track of members' payments and receipts for the office. Clerks would balance the cash sheet at the end of each day then reconcile the sheet against the receipts and balances at the end of each week to make sure it accurately reflected the week's transactions. Clerks then sent the information to the Union's headquarters, and the finances could be audited by the Department of Labor.

Reams struggled with her duties throughout her time with the Union. She admits that her supervisors would often contact her about errors on the cash sheet or other documents. The record reveals, and Reams acknowledges, a string of mistakes—identifying the wrong branch into which a member would be admitted, incorrectly calculating members' dues, charging members more than the Union is legally allowed to charge, and failing to properly account for money members gave her. Reams contested a few, though not all, of the alleged mistakes. So all told, undisputed evidence shows that Reams committed scores of slipups. *See* R.26-10, PageID 714–26 (listing

roughly a dozen mistakes); R.26-11, PageID 727–881 (documenting multiple mistakes that required correction); R.26-12, PageID 882–1004 (same). She was never disciplined for these mistakes.

Now to the events that led to this lawsuit. On Friday, July 26, 2019, rather than end the day by reconciling the cash sheet with the usual audit performed with her co-worker, Reams left early for a chiropractor appointment. Reams's co-worker had discovered a discrepancy on the cash sheet, and Reams was aware of the mistake but said it could be fixed on Monday. Reams, however, didn't return to work Monday because she suffered a severe laceration to her carotid artery at her chiropractor appointment. The injury put Reams in the emergency room that weekend because of severe neck pain. The doctors discovered a seventy-percent blood blockage in her carotid artery, putting Reams at risk of a stroke and requiring blood-thinner medication. Reams informed her supervisors of her injury on Sunday, July 28, 2019. She was not discharged from the hospital until early August and did not return to work until August 19.

While Reams was out of work, the Union discovered there was a "surplus of $140.00 in the general fund," $42.57 was "missing" from the petty cash fund, and the merchandise inventory listed an extra hat and hooded sweatshirt, but the inventory issue was later resolved. When the Union contacted Reams to ask about the discrepancies, she said she could not explain the errors without the financial information in front of her.

When Reams returned to work on August 19, her supervisors met with her to ask about these financial discrepancies. Reams asserted that a Union member had overpaid her by $100, and that she had accidentally placed $40 into the petty cash fund, thus leading to the $140 inaccuracy on the cash sheet. Though there is some dispute over the $100, Reams's explanation purportedly clarified what had happened to the $140 but left the remaining $2.57 unresolved.

The Union fired Reams the next day. She recalls being told that she was being terminated because of the financial discrepancies discovered during her absence, but she does not specifically recall any mention of being fired for her past mistakes.

**B.**

Reams sued the Union on April 27, 2021, alleging that it discriminated against her when it terminated her employment because of her disability, violating both the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, and Ohio Revised Code Ann. § 4112.01, *et seq.* The Union moved for summary judgment. The district court found that Reams was disabled within the meaning of the ADA due to her neck injury but sided with the Union because Reams could not show that the Union's performance-related reasons for terminating her were pretextual. The district court granted summary judgment in the Union's favor on February 23, 2023. *Reams v. Loc. 18, Int'l Union of Operating Eng'rs*, No. 3:21 CV 878, 2023 WL 2185971, at \*8, \*10 (N.D. Ohio Feb. 23, 2023). Reams timely appealed.

**II.**

We review grants of summary judgment de novo. *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 297 (6th Cir. 2019). The moving party must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. And we construe all evidence in the light most favorable to the nonmoving party. *Morrissey*, 946 F.3d at 297.

**III.**

The ADA prohibits discrimination in employment decisions against individuals "on the basis of disability." 42 U.S.C. § 12112(a). Ohio's Revised Code similarly proscribes discrimination in employment "because of . . . disability." Ohio Rev. Code Ann. § 4112.02(A).

"The Ohio anti-discrimination law mirrors the ADA," so we apply "the legal standard under the ADA to claims brought under both laws." *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 560 (6th Cir. 2022).

When a plaintiff relies on indirect evidence to show discrimination, as Reams does here, we analyze the claim under the *McDonnell Douglas* burden-shifting framework. *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). The burden falls first on the plaintiff to establish a prima facie case of discrimination. *Hrdlicka*, 63 F.4th at 566. If the employee can make such a showing, the burden shifts to the employer to produce legitimate, nondiscriminatory reasons for the adverse employment action. *Id.* at 567; *Sjostrand v. Ohio State Univ.*, 750 F.3d 596, 599 (6th Cir. 2014). The burden then shifts back to the employee in the third and final stage to show that the employer's proffered reasons are a pretext for discrimination. *Hrdlicka*, 63 F.4th at 567.

Even if Reams can clear the first hurdle and make a prima facie showing of discrimination, her claim fails at the third step. Since we assume without deciding that Reams can make a prima facie showing, we focus on whether the Union's reasons for firing Reams were pretextual. *See Bogart v. Univ. of Ky*, 766 F. App'x 291, 299 (6th Cir. 2019); *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 80 (6th Cir. 2020). For the reasons explained below, we hold that the Union proffers undisputed evidence of nondiscriminatory reasons for terminating Reams, and she cannot make the necessary showing to rebut this evidence as pretext.

**A.**

The Union put forth legitimate, nondiscriminatory reasons for terminating Reams, pointing to both the financial discrepancies discovered in her absence and her many mistakes and errors in handling the branch's financial transactions with members. *See Imwalle v. Reliance Med. Prods.,*

*Inc.*, 515 F.3d 531, 546 (6th Cir. 2008) (explaining that "[p]oor performance is a legitimate, nondiscriminatory reason for terminating a person's employment"). Reams does not dispute that many of these errors occurred, *see* R.26-1, Reams Depo., pp.64–65, PageID 371–72, and her brief appears to concede that the Union offered legitimate reasons for terminating her, *see* Appellant Br. at 23–25 (challenging the evidence as pretextual rather than challenging its veracity). The record thus establishes that the Union had a legitimate reason to fire Reams. And the burden here is one of production, not persuasion. *Sjostrand*, 750 F.3d at 599. So the Union has proffered sufficient evidence to shift the burden back to Reams.

**B.**

To prevail at this final stage, Reams must show that the Union's explanation is a pretextual mask for discrimination, *Hrdlicka*, 63 F.4th at 567, meaning that they fired her because of her disability, not because of her many mistakes. An employee "can show that an employer's explanation was pretextual in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 320 (6th Cir. 2019) (internal quotation marks omitted). No matter the label, the "three-part test need not be applied rigidly," because pretext is a "commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)).

**1.**

Reams expressly relies on the second and third options above. First, Reams argues that the Union's proffered reasons did not actually motivate its decision to fire her. If a plaintiff pursues

the second option, the plaintiff admits "the factual basis underlying the employer's proffered explanation" and concedes "that such conduct could properly motivate dismissal." *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012); *Bogart*, 766 F. App'x at 299. And to succeed on this second theory, the plaintiff "must provide evidence which tends to prove that an illegal motivation was more likely than that offered by the defendant." *Brown*, 814 F. App'x at 82 (cleaned up). This usually reduces to the argument that the "sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or coverup." *Santiago v. Meyer Tool Inc.*, No. 22-3800, 2023 WL 3886405, at *6 (6th Cir. June 8, 2023) (internal quotation marks omitted); *Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496, 503 (6th Cir. 2007).

Reams has failed to make the requisite showing. The Union presents general evidence of many past mistakes and specific evidence of mishandling $142.57 the Friday before Reams's incident. The general evidence of undisputed mistakes shows a pattern of errors right before Reams's termination, ranging from over-charging members to mishandling payments. R.26-1, pp.37–41, 88, PageID 365–66, 377; *see generally* R.26-10, PageID 714–26; R.26-11, PageID 727–881; R.26-12, PageID 882–1004 (all three compiling several errors in calculating dues amounts, misstating due dates, and inaccurately recording financial transactions). And the specific evidence of the misplaced $142.57 reveals that "at best, she had improperly intermingled petty cash into the cash sheet funds, did not keep a receipt of what the petty cash was spent on, failed to make proper change for a member which resulted in a $100 overcharge, and was unable to account for the remaining $2.57 missing from petty cash." *Reams*, 2023 WL 2185971, at *10 (citations omitted). Reams admitted that she was aware the Department of Labor could audit the Union's books. R.26-

1, p.28, PageID 362. And missing cash in a labor union could be a major issue. *See id.* at p.82, PageID 376 (admitting the cash was off because there is "no way to account for the $2.57").

Reams attempts to downplay the above evidence by arguing that she was never disciplined for these errors, so they cannot justify her termination. But prior discipline is not a prerequisite for legitimate termination. We have found that emails correcting mistakes are enough to document poor work performance such that they can legitimately justify later adverse employment action, even where no one was disciplined. *See Kovacevic v. Am. Int'l Foods*, No. 22-1675, 2023 WL 3756063, at *7 (6th Cir. June 1, 2023); *see also Brown*, 814 F. App'x at 81–82 (holding that poor performance without discipline could justify not rehiring employee); *Fabiniak v. Wal-Mart Stores E., LP*, No. 22-3636, 2023 WL 2592358, at *3–4 (6th Cir. Mar. 22, 2023) ("Even if [the employer] skipped a step in the disciplinary process," there was no evidentiary basis undermining the assessment of the employee's faults that led to his termination.). So just because the corrections did not lead to any formal discipline does not mean those mistakes cannot supply legitimate grounds for termination.

Reams's attempt to dispute the evidence of mishandling $142.57 also fails. Even if Reams has an innocuous explanation for why she over-charged a member $100 and why she misplaced $40 of petty cash, she cannot avoid summary judgment by challenging only these errors. Reams invokes *Babb v. Maryville Anesthesiologists, supra*, to argue that summary judgment is inappropriate when the employee contests the errors that ostensibly led to termination. But that case does not help her. In *Babb*, we found evidence of pretext when the plaintiff submitted expert testimony to refute two alleged errors. 942 F.3d at 322. Importantly, these were the only two purported errors that led to termination. So the fact that they were in dispute made it "more likely"

8

that they were not the "real motivation behind" the employee's termination. *Id.* (internal quotation marks omitted).

That is not the case here. Even if we ignore the few contested errors, the record still supports a finding that "there is no dispute" that Reams had a "history of job-related errors." *Reams*, 2023 WL 2185971, at \*2. So the undisputed evidence supports the Union's contention that Reams committed many mistakes in performing her job duties. The record also shows that $140 was actually misplaced, R.26-1, pp.78–79, PageID 375, Reams could not recall to whom the extra $100 belonged, *id.* at pp.81–83, PageID 376, and she conceded there is "no way to account for the $2.57," *id.* at p.82, PageID 376. So she cannot successfully refute the $142.57 discrepancy. Although a "plaintiff need not always 'produce additional evidence to support a finding of pretext[,]' if the plaintiff points to evidence that she already presented, it must specifically rebut the employer's proffered legitimate, nondiscriminatory reason." *Santiago*, 2023 WL 3886405, at \*5 (quoting *Brown*, 814 F. App'x at 85). In other words, "mere conjecture that the employer's explanation is a pretext for discrimination is an insufficient basis for denial of summary judgment." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002) (cleaned up) (quoting *Carney v. Cleveland Heights–Univ. Heights Sch. Dist.*, 758 N.E.2d 234, 245 (Ohio Ct. App. 2001)) (applying Ohio Rev. Code Ann. § 4112.02); *Fabiniak*, 2023 WL 2592358, at \*4 (same).

Reams's final argument is about temporal proximity. She asserts that because she was fired so quickly after returning from her injury, there is a fact issue on whether discrimination motivated her termination. But temporal proximity, "on its own, fails"—it is "insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual." *Sublett v. Masonic Homes of Ky., Inc.*, No. 21-5959, 2022 WL 2798998, at \*6 (6th Cir. July 18, 2022) (quoting *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317

(6th Cir. 2001)). Because Reams cannot rebut the undisputed evidence against her, the temporal proximity argument in isolation cannot carry the day.

**2.**

Reams also cannot rely on the third option for showing pretext—that the employer's proffered reasons are insufficient to motivate the employer's action—because she does not make the required showing of a comparator. "The third category of pretext consists of evidence that other employees, particularly employees outside the protected class, were not disciplined even though they engaged in substantially identical conduct to that which the employer contends motivated its discipline of the plaintiff." *Chattman*, 686 F.3d at 349; *see also Santiago*, 2023 WL 3886405, at *7; *Bogart*, 766 F. App'x at 299–300. But Reams offers no such evidence.

Reams briefly alleges that her co-worker, Kim Roberts, also made mistakes when she was a clerk. Appellant Br. at 4, 36. But Reams does not explain how Roberts—or any other employee for that matter—was outside a protected class, not disciplined, or similarly situated. Particularly, Reams fails to show how Roberts was similarly situated to Reams in committing the same number of mistakes. Though Reams points generally to a past clerk making mistakes, she cannot point to evidence that other employees "were not fired even though they were engaged in substantially identical conduct." *Blizzard*, 698 F.3d at 286–87 (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)); *see Peters*, 285 F.3d at 474. Reams does not show that employees that made a similar number of errors as she did kept their jobs. So her arguments fall short here.

We therefore affirm the district court on the ground that Reams has not shown a genuine issue of material fact as to whether the Union's nondiscriminatory reasons for firing her were pretext for discrimination.

## III.

For the reasons set forth above, we AFFIRM.