**Adrian B. GADDY, a Minor, By and Through her Mother and Next Friend, Joyce GADDY, Plaintiff,**

v.

**FOUR B CORP. d/b/a Balls Price Chopper, Defendant.**

No. 95–2542–JWL.

United States District Court, D. Kansas.

Jan. 2, 1997.

**332**

Ruth M. Benien, Benien & Kaplan, Chtd., Kansas City, KS, for Joyce Gaddy, Adrian B. Gaddy.

John D. Dunbar, Kelly Susan May, Daniels & Kaplan, P.C., Kansas City, MO, for Four B Corporation.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

## I. Introduction.

This employment discrimination case comes before the court on the defendant's motion (Doc. # 22) for summary judgment pursuant to Fed.R.Civ.Pro. 56(c). In her complaint, the plaintiff asserts that the defendant discriminated against her based on her disability (asthma) when it terminated her in violation of the Americans with Disabilities Act and the Kansas Act Against Discrimination (KAAD). In its summary judgment motion, the defendant argues (1) that the plaintiff failed to exhaust her administrative remedies, (2) that the plaintiff is not an "individual with a disability" within the meaning of the ADA, and (3) that the defendant terminated the plaintiff based on a legitimate, non-discriminatory reason. For the reasons discussed below, the defendant's motion for summary judgment is granted and the plaintiff's complaint is dismissed.

## II. Facts.

The following facts are either uncontroverted or, if controverted, construed for the purposes of resolving this motion in the light most favorable to the plaintiff. The plaintiff, a sixteen year old female residing in Kansas City, Kansas, suffers from asthma.[1] When

---

**1.** Asthma is a condition of the lungs in which    there is widespread narrowing of airways, vary-

she wheezes, the plaintiff uses her inhaler, which allows her to breathe normally again. When she is at home and feels an impending asthma attack, the plaintiff uses a breathing machine.[2] Subsequent to her asthma diagnosis, the plaintiff's physician, Dr. Krishna, did not restrict her from any activities. Dr. Krishna did instruct the plaintiff that if she has difficulty breathing, she should slow down and sit down. Despite her asthma, the plaintiff was a football and basketball cheerleader during her eighth and ninth grade years and played volleyball in physical education class. The plaintiff contends that the cheerleading did not involve any physical exertion and that most of the time she was not able to play volleyball because of her asthma.

Sometime during June of 1995, the plaintiff decided that she wanted to find a part-time job close to her home. Because the defendant's place of business, which is located at 7734 State Avenue in Kansas City, Kansas, is close to her residence, the plaintiff sought and received an interview with Mr. Wendell Ray, the defendant's service manager.[3] During this interview the plaintiff informed Mr. Ray that she had asthma and, as a result, could not push carts from the parking lot back into the store. After the interview, Mr. Ray decided that if the plaintiff could perform the other courtesy clerk duties [4] satisfactorily, he could justify hiring her, even though she could not retrieve carts from the parking lot. On June 30, 1995, the defendant hired the plaintiff as a courtesy clerk. Pursuant to the defendant's hiring policy, the plaintiff's first forty-five days on the job were a probationary period.

Sometime around August 15, 1995, Mr. Ray asked to speak with the plaintiff in his office. The plaintiff contends that Mr. Ray said to her that "Adrian, I'm sorry, but you can't work here anymore because you have asthma and you can't get the carts." When the plaintiff's mother, Ms. Joyce Gaddy, picked the plaintiff up from work that day, the plaintiff informed her that she had been terminated. Ms. Gaddy parked her car and went in to find out the reason why her daughter had been terminated. Mr. Ray allegedly told Ms. Gaddy that he had terminated her daughter because she could not retrieve the carts. Mr. Ray allegedly further explained that the plaintiff's co-workers were having to do work that Adrian was not having to do. In a memorandum prepared shortly after the plaintiff's termination, Mr. Ray mentioned several examples of the plaintiff's "laziness" and stated that he did not believe it was "... fair for the other courtesy clerks to go out and push carts and Adrian stay inside and sit on the ends of the checkstands." *Plaintiff's response*, Exhibit F.

On September 5, 1995, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that the defendant discharged her because of her disability (asthma) in violation of the ADA. Her charge indicated that she was a resident of Kansas, that her employer (the defendant) was located in Kansas, and that the discriminatory acts occurred in Kansas. The EEOC, however, placed the Missouri Human Rights Commission (MHRC) on the paperwork and did not refer it to the Kansas Human Rights Commission (KHRC). In a letter to the EEOC dated September 5, 1995, the plaintiff informed the EEOC that

ing over short periods of time either spontaneously or as a result of treatment, due in varying degrees to contraction (spasm) of smooth muscle, edema of the mucosa, and mucus in the lumen of the bronchi and bronchioles; these changes are caused by the local release of spasmogens and vasoactive substances (*e.g.* histamine, or certain leukotrienes or prostaglandins) in course of an allergic process. *Stedman's Medical Dictionary* 158 (26th ed. 1995).

2. In her deposition, the plaintiff testified that she uses the breathing machine maybe once a year. However, the plaintiff's mother testified in her deposition that the plaintiff uses the breathing machine at least three times a year.

3. The defendant's employment application states that applicants must be sixteen to apply for a courtesy clerk position and eighteen to apply for any other position. Thus, the plaintiff could only apply for the courtesy clerk position.

4. Besides retrieving carts from the parking lot, the plaintiff could perform all of the courtesy clerk's duties including, among other things, sacking groceries, mopping halls and bathrooms, general store cleanup, carrying food back to shelves, stocking sacks, and changing trash bags.

she had retained an attorney and requested a Right to Sue Letter so she could pursue the matter in federal district court. On September 12, 1995, the EEOC mailed the plaintiff a Right to Sue Letter based on the EEOC's determination that it would not be able to complete its process within 180 days from the filing of the plaintiff's charge of discrimination.

## III. Standard for summary judgment.

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir.1995). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.Pro. 56(c); *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non-movant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determina-

tion of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

## IV. Discussion.

### A. Exhaustion of administrative remedies.

The defendant contends that the plaintiff's disability discrimination claim is barred because she failed to exhaust her administrative remedies as required by the ADA and the KAAD due to the fact that she did not file her disability discrimination claim with the KHRC and give the KHRC sixty days to render a determination as required by 42 U.S.C. § 2000e–5(c)[5] and K.S.A. § 44–1001 *et seq.* In response, the plaintiff points to the fact that her charge of discrimination correctly indicates that she is a resident of Kansas, the defendant is located in Kansas, and the allegedly discriminatory conduct occurred in Kansas. Based on this correct information, the plaintiff argues that the fact that the MHRC was mistakenly placed on the top of her complaint should not preclude her from pursuing her disability discrimination claim. Moreover, the plaintiff contends that her disability discrimination claim should not be barred by the fact that the EEOC issued her a Right to Sue letter prematurely because she justifiably relied on the EEOC's issuance of her Right to Sue Letter.

### 1. KAAD claim.

■ In *Van Scoyk v. St. Mary's Assumption Parochial School*, 224 Kan. 304, 580 P.2d 1315 (1978), the Kansas Supreme Court addressed the issue of whether an individual must exhaust administrative remedies before filing an action under the KAAD in court. In holding that an individual must exhaust his or her administrative remedies before seeking judicial relief, the *Van Scoyk* court stated,

5. 42 U.S.C. 2000e–5(c) provides, in pertinent part,

In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such

practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (a) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated....

We think it clear that recourse must first be made to the Commission by an aggrieved individual, and the administrative remedies must be exhausted before recourse to the courts. Where the administrative procedure proves efficacious, court action will in most instances be unnecessary. Where a hearing is held, after an order of the Commission is entered and after the rehearing procedure is exhausted, anyone still aggrieved may appeal to the district court.

*Id.* at 306, 580 P.2d 1315 (citations omitted). Because the KHRC never held a hearing on the plaintiff's disability discrimination claim and, thus, never issued an order on which a rehearing could be sought, the plaintiff did not exhaust her administrative remedies on her KAAD disability discrimination claim as required by *Van Scoyk. Id.* As a result, the plaintiff is barred from pursuing her disability discrimination claim under the KAAD. *Id.* Therefore, the court grants the defendant's motion for summary judgment with respect to the plaintiff's KAAD claim. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2553–54.[6]

### 2. ADA claim.

Title I of the ADA proscribes discrimination by a "covered entity" against "a qualified individual with a disability because of the disability" in all terms, conditions and privileges of employment. 42 U.S.C. § 12112(a). Title I adopts the procedures of Title VII, 42 U.S.C. § 12117(a). Under Title VII, and thus for the purposes of an ADA claim, filing a charge of discrimination with the EEOC is a condition precedent to suit. *Million v. Frank,* 47 F.3d 385, 389 (10th Cir.1995) (citations omitted).

■ In this case, the plaintiff timely filed a charge of discrimination with the EEOC and the EEOC issued her a Right to Sue Letter.

Although Kansas is a deferral state requiring that the EEOC defer its investigation to the KHRC, the plaintiff's EEOC filing is sufficient to activate the KHRC's investigation because she is entitled to rely on the EEOC to refer her discrimination charge to the KHRC based on the information she provided the EEOC. *See, e.g., Morris,* 849 F.Supp. at 1427 (citing *Love v. Pullman Co.,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1992)). For some reason, however, the Missouri Human Rights Commission, instead of the KHRC, was inserted in the relevant space on plaintiff's charge of discrimination. While it is not clear how this mistake occurred, the uncontroverted evidence indicates that this mistake was not the plaintiff's fault. The information on the plaintiff's charge of discrimination indicates that she is a Kansas resident, her employer is located in Kansas, and the allegedly discriminatory acts occurred in Kansas. Moreover, the uncontroverted evidence indicates that the plaintiff, a layperson, was not assisted by an attorney when she filled out her charge of discrimination. Thus, the plaintiff cannot be expected to correct the fact that the Missouri Human Rights Commission, not the KHRC, was improperly written on her charge of discrimination. *See Love,* 404 U.S. at 527, 92 S.Ct. at 619. ("Such technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers initiate the process.").

Similarly, the court believes that the plaintiff was justified when she brought this lawsuit in an otherwise timely manner after she received her Right to Sue Letter. The plain language of 42 U.S.C. § 2000e–5(c), "no *charge* may be filed ... by the person aggrieved ..." (emphasis added) seems to put the onus on the EEOC to reject a charge for

6. The court notes that in *Morris v. State of Kan. Dept. of Rev.,* 849 F.Supp. 1421 (D.Kan.1994), Judge Crow discusses a worksharing agreement that is commonly in place between the EEOC and the KHRC which might have been applicable to the problem discussed here to the extent that it may have included the kinds of cross designations of agency for receiving charges and waivers of exclusive jurisdiction discussed there (or other provisions which could have been useful in ascertaining the consequences of the EEOC's actions in this case). *Id.* at 1428. However, neither party made any such agreement a part of the record here and, although the court might well have denied a motion to *dismiss* in light of the possibility that a worksharing agreement might exist that could lay to rest issues of exhaustion, at the summary judgment stage it is not the court's function to speculate or to go beyond the factual record created by the parties.

filing if it is proffered improvidently.[7] Thus, since the time limitations of Section 2000e–5 have been held in this circuit to be subject to waiver and estoppel, *see, e.g. Biester v. Midwest Health Services, Inc.,* 77 F.3d 1264 (10th Cir.1996), it would appear likely that the Tenth Circuit would agree with plaintiff's contention that she was entitled to rely on the EEOC giving her the Right to Sue letter.[8] If the court held otherwise, all plaintiffs suing under Title VII's enforcement framework would be forced to question whether the EEOC had properly handled their charge of discrimination before they brought suit. The discrimination statutes following Title VII's enforcement framework do not place such an onerous burden on a plaintiff. As a result, the court rejects the defendant's exhaustion of administrative remedies argument with respect to the plaintiff's ADA claim because the plaintiff timely filed her disability discrimination charge with the EEOC, because any failure by the plaintiff to process her charge through the KHRC as required by 42 U.S.C. § 2000e–5(c) was a result of the actions and omissions of the EEOC, and because the defendant has not shown that its rights were prejudiced as a result of the EEOC's conduct.

## B. Disability discrimination.

The plaintiff contends that her asthma, which must be viewed in its premedicated state pursuant to EEOC Interpretative Guideline § 1630.2(j), constitutes a physical or mental impairment that substantially limits her breathing, which is a major life activity, and, in the alternative, that the defendant regarded her as disabled as a result of her asthma. The defendant contends that the plaintiff's asthma does not substantially limit her breathing because she controls it with medication and that it did not regard the plaintiff as disabled because of her asthma.

In order to state a prima facie case of disability discrimination under the ADA, the plaintiff must establish: (1) that she is a disabled person within the meaning of the ADA; (2) that she is qualified, that is, with or without reasonable accommodation (which she must describe) she is able to perform the essential functions of the job; and (3) that the employer terminated her because of her disability. *White v. York Int'l Corp.,* 45 F.3d 357, 360–61 (10th Cir.1995). The ADA defines the term "disability" as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2).

### 1. Analysis.

#### a. Substantially limits.

The ADA does not define the term "major life activities," but the Tenth Circuit has found that the EEOC regulations issued to implement it, 29 C.F.R. § 1630, are instructive. *See Bolton v. Scrivner, Inc.,* 36 F.3d 939, 942 (10th Cir.1994). "The term 'means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.'" *Id* (citing 29 C.F.R. § 1630.2(i)). The *Bolton* court concluded that three factors should be considered when determining whether an impairment substantially limits a major life activity of an individual: (1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment. *Id* at 943.

---

7. For the reasons discussed in the previous footnote, the court is unable to determine whether filing with the EEOC was, by itself, enough to satisfy the statute under any worksharing agreement that may have been in place. However, the EEOC's handling of the charge here leads the court to suspect, although it does not rely on the suspicion in reaching its conclusion, that the answer may well lie in documents not presented to this court.

8. To that extent, then, this case is distinguishable from one in which a party attempts to file a lawsuit in the wrong court and as a result delays commencing the action until after the running of the limitation period for filing upon receiving a Right to Sue letter. *See Merrill v. Cintas Corp.,* 941 F.Supp. 1040 (D.Kan.1996). The plaintiff's justifiable reliance on the EEOC to know the preconditions to issuing its Right to Sue letter differs significantly from a party's retained lawyer's unilateral mistake.

Construing the facts in a light most favorable to the plaintiff, the court concludes that the plaintiff is not disabled within the meaning of the ADA. In *Murphy v. United Parcel Service, Inc.*, 946 F.Supp. 872 (D.Kan. 1996)[9], United States District Judge Sam Crow rejected EEOC Interpretative Guideline § 1630.2(j)'s pre-medicated perspective because it conflicts with the plain language of the ADA, which requires an ADA plaintiff to show that his or her impairment "substantially limits" a major life function. *Id.* at 879–80; *Deckert v. City of Ulysses, Kan.*, No. 93–1295, 1995 WL 580074 at *6–7 (D.Kan. Sept. 6, 1995) (Kelly, J.). Judge Crow reasoned,

Although agency interpretations are to be given deference, *see Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), in this instance the EEOC's interpretation is in direct conflict with the language of the statute that requires plaintiffs in ADA cases to show that an impairment "substantially limits" their lives. 42 U.S.C. § 12102(2)(A); *see Public Employees Retirement System v. Betts*, 492 U.S. 158, 171, 109 S.Ct. 2854, 2863–64, 106 L.Ed.2d 134 (1989) (" [O]f course no deference is due to agency interpretations at odds with the plain language of the statute itself."). If an insulin-dependent diabetic can control her condition with the use of insulin or a near-sighted person can correct her vision with eyeglasses or contact lenses, she cannot argue that her life is substantially limited by her condition. To say that a person who needs insulin or eyeglasses is disabled in fact is to read out

of the act's first definition of disability the requirement that it applies only to those persons who are "substantially limited" in major life activities.

*Murphy*, 946 F.Supp. at 881 (quoting *Schluter v. Industrial Coils, Inc.*, 928 F.Supp. 1437, 1445 (W.D.Wis.1996)). This court concurs that EEOC Interpretative Guideline § 1630.2(j)'s pre-medicated perspective is in direct conflict with the ADA's express statutory language requiring that the impairment substantially limit an individual's major life function in order to constitute a disability under the ADA. *See Moore*, 950 F.Supp. at 1088.

Having concluded that the plaintiff's asthma should be evaluated in its medicated state, the court must now determine whether the plaintiff has presented sufficient evidence from which a reasonable factfinder could conclude that her asthma constitutes a disability under the ADA. The uncontroverted evidence indicates that the plaintiff successfully controlled her asthma with an inhaler and, if necessary, a breathing machine.[10] *Defendant's motion*, Exhibit A p. 16–17.[11] Thus, there is no evidence from which a reasonable factfinder could conclude that the plaintiff's asthma substantially limited the plaintiff's breathing. *See Deckert*, 1995 WL 580074 at *7. As a result, the plaintiff is not disabled within the meaning of § 12102(2)(A).

### b. "Regarded as" disabled.

There are three different ways in which an individual may satisfy the definition

---

9. On December 27, 1996, the defendant, without seeking prior approval, filed a memorandum discussing the applicability of the *Murphy* decision. However, prior to the filing of the defendant's memorandum, the court was already aware of *Murphy* and its applicability. In a memorandum and order filed December 27, 1996, in *Moore v. City of Overland Park*, 950 F.Supp. 1081 (D.Kan. 1996), this court relied on *Murphy* in arriving at the same conclusion as it does here. Thus, the court did not consider the defendant's unauthorized memorandum, and, in fact, had already drafted this portion of its memorandum and order in this case when it received defendant's supplemental papers.

10. In her response, the plaintiff cited evidence concerning the plaintiff's ability to obtain other

employment. However, while such evidence is potentially relevant if the plaintiff was asserting that her asthma substantially limited her ability to work, it is not relevant in this matter because the plaintiff has asserted that her asthma substantially limited only her ability to breathe.

11. The plaintiff also contends that her asthma constitutes a disability within the meaning of the ADA because it prevented her from engaging in physical activity. The uncontroverted evidence indicates that the plaintiff's physician did not specifically restrict her from physical activity and that the plaintiff has engaged in some physical activities such as volleyball and cheerleading. Moreover, unlike breathing, physical activity has not been recognized as a major life activity as defined by the ADA.

of "being regarded as having a disability": (1) The individual may have an impairment which is not substantially limiting but is perceived by her employer as constituting a substantially limiting impairment; (2) The individual may have an impairment which is only substantially limiting because of the attitudes of others toward the impairment; or (3) The individual may have no impairment at all but is regarded by her employer as having a substantially limiting impairment. *MacDonald v. Delta Air Lines, Inc.*, 94 F.3d 1437, 1444 (10th Cir.1996) (citing 29 C.F.R. § 1630.2(*l* )(1)–(3)); *Murphy*, 946 F.Supp. at 879 (citations omitted).

> Thus, [a] person is regarded as having an impairment that substantially limits the person's major life activities when other people treat that person as having a substantially limiting impairment. The focus is on the impairment's effect upon the attitudes of others.

*Id.* (quotations omitted). In her argument, the plaintiff contends that she falls within the first option.

■ Construing the facts in a light most favorable to the plaintiff, the court concludes that the plaintiff has not produced evidence from which a reasonable factfinder could conclude that the defendant perceived the plaintiff's asthma as substantially limiting any of her major life activities. The uncontroverted facts indicate that the "no cart retrieving" restriction was created by the plaintiff, not by the defendant's speculation, stereotype, or myth and that the defendant agreed to hire the plaintiff with full knowledge of her asthma and her self-imposed "no cart retrieving" restriction. Thus, the uncontroverted evidence indicates that the plaintiff treated her post-treatment asthma as an impairment, that the defendant agreed to attempt to reasonably accommodate the plaintiff's self-imposed "no cart retrieving" restriction arising from her own perception of impairment, and that the plaintiff was terminated when the defendant concluded that the plaintiff's self-imposed "no cart retrieving" restriction was not fair to the other courtesy clerks. These facts do not indicate, directly or circumstantially, that the defendant regarded the plaintiff's asthma as substantially limiting one of her major life functions or otherwise perceived her as having any disability. Rather, the facts evidence an employer unsuccessfully attempting to bend rules to provide for, that is, to reasonably accommodate, an employee with a self-imposed restriction arising from a self perceived impairment, which does not actually substantially limit any of her major life functions. The ADA's definition of disabled does not encompass this kind of fact situation. If courts were to interpret the ADA to hold otherwise, employers would be discouraged from attempting to work with people who, though not actually disabled, feel themselves in need of some special treatment from their employer to help them obtain or keep their jobs. Moreover, a contrary interpretation would permit a sort of bootstrap definition of disability by which plaintiffs could seek redress under the ADA based on their own unilateral perception that they are disabled even when they do not meet the legal definition as long as their employer was initially sympathetic. Thus, the court concludes that the plaintiff has failed to demonstrate that she is disabled within the meaning of the ADA. As a result, the plaintiff's prima facie case fails and the court grants the defendant's motion for summary judgment. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2553–54.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion for summary judgment (Doc. # 22) is granted and that the plaintiff's complaint is dismissed.

**IT IS SO ORDERED.**