NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0364n.06

No. 23-5700

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 21, 2024
KELLY L. STEPHENS, Clerk

CHRISTIE ANDREWS,

    Plaintiff-Appellant,

v.

TRI STAR SPORTS AND ENTERTAINMENT
GROUP, INC.,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF
TENNESSEE

Before: SILER, CLAY, and GRIFFIN, Circuit Judges.

SILER, J., delivered the opinion of the court in which GRIFFIN, J., joined. CLAY, J. (pp. 11–22), delivered a separate dissenting opinion.

SILER, Circuit Judge. Plaintiff-Appellant Christie Andrews argues that her former employer, Defendant-Appellee Tri Star Sports and Entertainment Group, Inc., discriminated against her because she suffers from asthma. Her firing, she claims, was a violation of the Americans with Disabilities Act (ADA). 42 U.S.C. § 12101 *et seq*. But to lodge a claim under the ADA, Andrews's asthma must fall under its definition of a "disability." The essential question is whether Andrews's asthma substantially limits her breathing. Because the undisputed facts show that Andrews's asthma does not, we affirm the district court's grant of summary judgment in favor of Tri Star.

I.

Tri Star is a business management firm that provides accounting and financial services to athletes and entertainers. Andrews started working for Tri Star in 2014. She eventually joined its Nashville office as a Team Coordinator/AmEx liaison.

*Andrews's Personal History*

Andrews was diagnosed with asthma when she was fourteen or fifteen. She uses three medications daily and an inhaler as needed. Prior to her work at Tri Star, Andrews cheered competitively, sang and danced in a professional musical production in New York City, and coached cheerleading. While working at Tri Star, Andrews competed in exhibition cheerleading. She also attended 100-200 minute "heavy exertion" CrossFit classes two or three time weekly before suffering a rotator cuff injury. Since her termination from Tri Star, she went on cruises both to Alaska and the Caribbean, traveled to Spain and Orlando, and participated in gymnastics twice a week.

*Tri Star's Response to the Covid-19 Pandemic*

In March 2020, the Covid-19 pandemic forced the sudden cancellation of many live events. Tri Star earns commissions from live events and lost much of its revenue. To reduce its force, Tri Star's CEO determined that only those she deemed "essential employees"—those who generate money for the company—would be able to work from home, while "nonessential employees" who requested to work from home would be laid off.

*Andrews's Request to Work from Home*

Around this time, Andrews asked her primary care provider, a nurse practitioner, if she should take any specific precautions against Covid-19. Andrews's provider instructed her to "wash [her] hands, work from home if . . . able," and to "self-quarantine" if she experienced symptoms. The next day, when Andrews went to the office, Tri Star employees—including her desk mate—were using Lysol spray cleaner. Irritated by the spray, Andrews went to the bathroom, used her inhaler, and returned to her desk for the remainder of the day. After Andrews's supervisor expressed concern about Andrews's cough possibly being Covid-19, Andrews assured him that it

was "just a cough from asthma." That same day, the Human Resources (HR) manager sent an email asking employees to speak with her and their supervisors immediately if they needed to work from home.

Andrews emailed her supervisor and the HR manager requesting to work from home. She falsely claimed that her "doctor" was "pissed at [her] and called [her] irresponsible for not staying at home[.]"[1] Although Andrews told the HR manager that she would come into the office the next day, she later called her supervisor and said that her asthma and cough were getting worse. Again fearing that Andrews may have Covid-19, Andrews's supervisor instructed her to stay home for the day. The next day, Andrews emailed the HR manager a note from her primary care provider stating that she has "well controlled" asthma but would "benefit from working at home due to the rising risk of COVID-19." Meanwhile, the CEO deemed Andrews's position "nonessential." Two days later, Tri Star fired Andrews and nine other nonessential employees who requested to work from home.

*Procedural History*

Andrews sued Tri Star, alleging that it discriminated against her and failed to provide her reasonable accommodation, both in violation of the ADA. The district court granted Tri Star's motion for summary judgment and dismissed Andrews's claims. She appealed.

II.

a. Standard of review

We review the district court's grant of summary judgment de novo. *Back v. Nestle USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012). In considering a motion for summary judgment, the district

---

[1] Andrews now admits that the "doctor" was not actually her medical provider, but her best friend who works as a wound care nurse.

court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). We "will not entertain on appeal factual recitations not presented to the district court." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992).

### b. Andrews's asthma does not meet the ADA's definition of a disability.

Andrews claims that Tri Star violated the ADA by discriminating against her and failing to provide her reasonable accommodation. Any claim of discrimination under the ADA requires a plaintiff to first establish that she has a disability that falls under one of the ADA's three definitions. *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811 (6th Cir. 2020); 42 U.S.C. § 12102(1). The crux of this case, then, is whether the record reflects a genuine dispute over whether Andrews's asthma constitutes a disability under the ADA. It does not.

### i. Andrews forfeited her arguments regarding her immunocompromised status.

Before we delve into the ADA's three definitions of disability, we will first address a series of arguments that Tri Star claims Andrews failed to raise in her complaint. We have repeatedly held that new claims may not be raised in response to a motion for summary judgment, except in accordance with Federal Rule of Civil Procedure 15(a). *See Tucker v. Union of Needletrades, Indus., & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) ("To permit a plaintiff to do otherwise would subject defendants to unfair surprise.").

Many of Andrews's arguments, both in her response to Tri Star's motion for summary judgment and in her appeal, rest upon her claim that asthma substantially limits her immune function. Yet this claim is missing from her complaint, where Andrews never alleged that her asthma compromised her immune system or put her at an increased risk of contracting Covid-19. Because Tri Star only learned of these allegations in Andrews's response to its motion for summary

judgment, it was not afforded fair notice of her immune-related arguments or the grounds upon which they rested, and it had no opportunity to investigate them during discovery. *See id.* Therefore, Andrews forfeited any arguments that her asthma substantially limited, or was perceived as substantially limiting, her immune function.

Andrews disputes this forfeiture in her brief, arguing that her position was "more nuanced." In contending that she gave Tri Star fair notice of her immune-related arguments, Andrews quotes her complaint, where she alleged that "Defendant had actual knowledge of Plaintiff's disability being asthma and pulmonary issues and the physical limitations and/or restrictions arising out/or of or resulting from the disability." But this general allegation of "physical limitations and/or restrictions" does not implicate the arguments Andrews now makes regarding her immune function.

Andrews also makes much of Tri Star's alleged knowledge that her request for reasonable accommodation was related to her immune system. But this contention misses the point: The question is not whether Tri Star had knowledge of Andrews's alleged immunocompromised status. The question is whether Tri Star had fair notice that Andrews intended to claim in this litigation that her asthma substantially limited her immune function. Because Andrews failed to raise this claim in her complaint, it did not.[2] Her forfeiture is fatal to her arguments regarding her asthma's actual or perceived impact on her immune system and susceptibility to COVID-19. *Cf. id.*

---

[2] Andrews cites *Milam v. ASCAP*, 2023 WL 5673953 (M.D. Tenn. Sept. 1, 2023), to contend that "[t]he law does not require Andrews to plead a specific major life activity." We first note that *Milam* is an unpublished district court opinion and is therefore not precedential. Next, as Tri Star pointed out, *Milam* poses two key differences: First, it was a denial of a Rule 12(b)(6) motion to dismiss, not an order on summary judgment. *Id.* at *6. Second, the plaintiff in *Milam* alleged permanent hearing loss, ear sensitivity, and pain, and he claimed that his employer expressed concern about his ability to work with his hearing loss. *Id.* at *2. The *Milam* district court held that these claims were sufficient to infer that the plaintiff was alleging that his hearing—a major

> ii.    The record does not support Andrews's claim that her asthma substantially limits her breathing.

The ADA contains three definitions of disabled. Under the first, a person is disabled under the ADA if she has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). These activities include breathing. *Id.* at § 12102(2)(A). The ADA Amendment Act of 2008 instructed courts to determine whether an impairment substantially limits a major life activity "in favor of broad coverage" and "without regard to the ameliorative effects of mitigating measures." *Id.* at §§ 12102(4)(A), (4)(E)(i).

The district court found insufficient evidence for a jury to find that Andrews's asthma qualified as a disability under the ADA. Large parts of Andrews's brief are devoted to criticizing the district court's citation of cases that relied on pre-Amendment law. Yet the district court's reasoning is inconsequential to us as we conduct de novo review. *See Back*, 694 F.3d at 575.

For purposes of summary judgment, Tri Star agrees that Andrews has asthma, thereby satisfying the ADA's "physical . . . impairment" requirement. Andrews identifies her breathing as the "major life activity" impacted by her asthma. The question, then, is whether Andrews can show that her asthma "substantially" limits her breathing.

---

life activity under the ADA—was impaired. *Id.* at *6. But here, Andrews alleged no analogous claims or facts in her complaint that could put Tri Star on notice of her immune function arguments.

In her reply, Andrews also cites *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001), to contend that a plaintiff need not specifically identify her substantially limited major life activity in her complaint. But that case involved a denial of a Rule 12(c) motion for judgment on the pleadings—not an order on summary judgment. *Id.* at 851. And we made clear that the plaintiff *still* must provide the defendant with "fair notice of the claim and its supporting facts," which Andrews failed to do here. *Id.* at 854. With the breathing-focused claims Andrews made in her complaint, Tri Star was not given fair notice that she intended to claim that her asthma "substantially limited" her immune function.

She cannot. Andrews did not describe the impact of her asthma as severe enough to qualify as a "substantial limitation" on her breathing. A major life activity is "substantially limited" when an individual cannot perform that activity as an average person in the general population could perform it, or if she faces significant restrictions in the condition, manner, or duration under which she can perform the activity. 29 C.F.R. § 1630.2(j)(i)–(ii); *see also Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 299 (6th Cir. 2019).

Andrews's testimony does not reflect substantial limitations on her breathing. When Andrews was asked if there was anything her medical provider told her she could not do because of her asthma, she said, "[n]ot that I can't do . . . [W]hen I'm thinking of doing something, like, extra strenuous . . . I would check in with her, and we would come up with, like, a plan of action and whatever . . . I don't like to think that there's things I can't do." And when Andrews was asked what activities she *would* do but does not because of her asthma, she described a time she opted out of an Alaskan polar plunge and ridge hike, her avoidance of "cardio-intensive things," owning a German Shepherd or "living, like, in [a dog's] dander," using spray cleaners, or being in the cold for prolonged periods.[3] She could think of no further self-imposed limitations. She noted

---

[3]    A consistent issue in Andrews's briefing, both before the district court and us, is her failure to support her assertions with accurate record cites or any record cites at all. Andrews argues, for example, that her asthma "could be triggered [by] high humidity, stress and general exercise, strong smells, strong perfumes, [and] cleaning products." To support these contentions, she first cites Doc. 47 at page 1233 ¶ 54, which restates the contention and, in turn, cites the timestamp of Andrews's video deposition, which is not available in the record. The excerpts of Andrews's deposition transcript that *are* in the record are not timestamped and, in any event, the words "humid" or "humidity," "smell" or "smells," and "perfume" never appear within them.

She also cites the deposition transcript excerpts themselves, Doc. 40-1 at pages 309, 314, 320, and 771. But these citations do not support her contentions. On page 309, Andrews noted that wind blowing in her face can trigger her asthma and being in the cold "makes everything kind of constrict." On page 314, Andrews discussed an incident where she went to the hospital because the carbon monoxide detector in her home went off, and the providers were not sure if her symptoms were "because of the exposure to the carbon monoxide or from, like, stress." On page

that she uses her inhaler when the wind is in her face, in the cold, when around synthetic fog, or before she exercises. She also testified that she twice visited a hospital for her asthma—once when the carbon monoxide detector in her apartment went off (although she admitted that the cause of the episode was potentially stress from the alarm rather than the gas itself), and once during the winter when she was sick with the flu or a cold. She has never been hospitalized overnight. Andrews did not provide an expert or medical provider to testify about her condition or limitations.

Per Andrews's testimony, asthma *can* limit her breathing—but only in these transient, isolated, or "extra strenuous" circumstances. She did not testify or otherwise provide evidence that her asthma prevents her from breathing as an average person in the general population or that it poses significant restrictions to her breathing. As Tri Star points out, she is able to physically perform well beyond the average person: Andrews goes to gymnastics twice a week, travels internationally, embarked on cruises to Alaska and the Caribbean, attended 100-200 minute

---

320, Andrews described her Tri Star desk mate spraying Lysol to clean her desk. On page 771 of Doc. 49-1, Andrews described being "in shock and stressed" during her termination call and "coughing a lot," but she did not attribute this coughing to her asthma.

In short: we could not find any evidence in the cited record supporting Andrews's argument that her asthma "could be triggered [by] high humidity, stress and general exercise, strong smells, strong perfumes," or "cleaning products" other than Lysol spray.

Andrews also states that she "continues to have regular (not transient) episodes of breathing difficulty," and that she is "limited in her movement due to shortness of breath." She does not support either assertion with a record citation, and the record citations provided within the same paragraph do not support these assertions.

Likewise, Andrews made several unsupported or uncited declarations in the factual section of her brief: She stated, without citation at all, that her asthma symptoms "cause substantial issues with her ability to breathe, her ability to perform strenuous activities, her respiratory system, her pulmonary system, and her immune system," that she "was limited in her movement due to shortness of breath," and that her desk mate using Lysol spray caused her to cough.

Because none of the above statements were supported with accurate citations, we did not consider them in our analysis.

CrossFit workouts two or three times a week, was a competitive cheerleader and cheerleading coach, and sang and danced in a professional musical production. She also enjoys metal detecting and her dog. Though her asthma may prevent her from more extreme adventures or stimuli—ones she describes as "extra strenuous"—these types of limitations are not "substantial" when compared to the average person. Because Andrews only alleged that her asthma prevents her from participating in these few activities or settings, she did not raise a genuine issue of material fact as to whether she was substantially limited in the major life activity of breathing.[4]

> iii. Andrews forfeited her claim that there was a record of her asthma substantially limiting her breathing.

A person may also be considered disabled under the ADA if there exists a "record of . . . an impairment" that "substantially limits one or more major life activities of such individual." 42 U.S.C. §§ 12102(1)(A), (B). In its motion for summary judgment, Tri Star argued that Andrews failed to allege she had a record of her asthma substantially limiting a major life activity. Andrews failed to respond to this argument. The district court therefore found the question forfeited.

In rebutting the district court's finding, Andrews only points to one sentence in her response to Tri Star's summary judgment motion: "Tri Star's business records establish that it knew, had reason to know, and regarded Andrews as having a disability because Tri Star designated her as 'immune-compromised.'" There are two issues with this argument: First, as discussed above, Andrews did not allege in her complaint that her asthma substantially limited her immune function. She only alleged that it substantially limits her breathing. Tri Star's record of

---

[4]    Andrews mentions—albeit briefly—that she can maintain a very active lifestyle through use of "mitigating measures." Although she included this argument in her response to Tri Star's motion for summary judgment, the district court refused to consider it because she did not cite to the record. Because we do not entertain factual recitations not presented to the district court, we will not entertain Andrews's mitigation argument. *Guarino*, 980 F.2d at 404.

Andrews's immunocompromised status is irrelevant to her breathing claim. Second, nowhere in her summary judgment response did Andrews allege that a record existed of her asthma substantially limiting her breathing. Because Andrew did not raise this claim to the district court, she forfeited it. *See Am. Bank, FSB v. Cornerstone Cmty. Bank*, 733 F.3d 609, 615 (6th Cir. 2013).

iv.     Andrews forfeited her claim that Tri Star regarded her immune system as substantially limited by her asthma.

Finally, an individual may also be considered disabled under the ADA if she is "regarded as having such an impairment [that substantially limits one or more major life activities]" and can establish that she has been "subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. §§ 12102(1)(C), (3)(A). Andrews argues that Tri Star regarded her as immunocompromised and fired her because of that perceived impairment. But, as discussed above, Andrews forfeited any claims regarding her alleged immunocompromised status (or the perception thereof) when she failed to state that claim in her complaint. This claim, too, is forfeited.

Because there is no genuine dispute as to whether Andrews suffered from a disability under the ADA, we affirm the district court's judgment.

**CLAY, Circuit Judge, dissenting**. The majority's determination that Christie Andrews does not have a disability under the Americans with Disabilities Act (the "ADA") wrongfully assumes that those who are "truly" disabled cannot find ways to participate in everyday activities and blatantly contradicts the 2008 amendments to the ADA. 42 U.S.C. § 12101 *et seq.*, *amended by* ADA Amendments Act of 2008 (the "ADAAA"), Pub. L. No. 110–325, 122 Stat. 3553. Congress enacted the ADAAA to make it easier for individuals seeking the protection of the ADA to establish that they have a disability. By ignoring the text and intent of the ADAAA, the majority erroneously determines that Andrews' asthma does not qualify as a disability because she is able to engage in various exercise-related activities—albeit with the routine use of her inhaler and medication, which the majority conveniently declines to acknowledge. Because Andrews has created a triable issue of fact as to whether she is disabled within the meaning of the ADAAA, I respectfully dissent.

## I. BACKGROUND

Andrews worked at Tri Star, a business management firm serving athletes and entertainers with offices in Nashville and Los Angeles, from mid-2014 until March 20, 2020. Tri Star financially struggled during the COVID-19 pandemic in 2020 due to a decline in its business, which resulted in a reduction in force ("RIF") that included Andrews' termination. While Tri Star claims that it fired Andrews for purely economic reasons, Andrews alleges that her termination was due to her disability of asthma.

Andrews was diagnosed with asthma when she was 14 or 15. When faced with various triggers, such as wind, temperature, certain smells, and stress, the effects of her asthma become heightened and often lead to chest tightening and coughing. Andrews' symptoms and shortness of breath occur more frequently in the colder months. To mitigate the effects of her asthma,

Andrews uses a daily inhaler, as well as daily doses of Singular, Flonase, and Zyrtec. With the use of her inhaler and medications, Andrews controls her asthma to the extent possible and can participate in various exercise activities.

On March 16, 2020, Andrews had an asthma attack while working at Tri Star that required her to use her rescue inhaler. Due to the pandemic, employees at Tri Star were using Lysol spray to clean their spaces. The aerosol spray triggered Andrews' asthma symptoms, so she utilized her rescue inhaler in the restroom. After Andrews continued to cough, her supervisor—Bryan Luecke—advised her to go home to ensure that she did not have or spread COVID-19. Andrews told Luecke that the cough was solely a result of her asthma.

That same day, Tri Star e-mailed its employees with the subject line "COVID-19 Work from Home Update." Andrews Dep., R. 40-1, Page ID #357. This e-mail noted that certain employees, including those affected by school closings or compromised immune systems, would "be given WFH preference." *Id.* Accordingly, Andrews decided to request to work from home "to limit [her] exposure to COVID due to [her] asthma," as she believed that her asthma would cause her to experience more severe COVID-19 symptoms. *Id.* at Page ID #325. Shortly after her Lysol-related asthma attack, Andrews replied to Luecke and Yolanda Simpson, Tri Star's Human Resources generalist, stating "since I already have a company laptop and a doctor who's pissed at me and called me irresponsible for not staying home, may I please be approved to work from home?" *Id.* at Page ID #328.[1] After a follow-up phone call with Simpson discussing the necessary documentation to support her request, Andrews provided a legitimate doctor's note on March 17, 2020, that stated: "Christie Andrews has been a patient at our office for several years. She has

---

[1] During her deposition, Andrews admitted that this "doctor" was her friend Emily, who was actually a nurse that did not provide her with medical treatment. *Id.* at Page ID #328–29.

known asthma. Although well controlled, she would benefit from working at home due to the rising risk of COVID-19." *Id.* at Page ID #334.

Also on March 17, 2020, Luecke e-mailed Simpson, Heather Kinder (Tri Star's CEO's executive assistant), and Peggy Stephens (Director of Business Management for Tri Star), noting that he had instructed Andrews to work from home due to her cough and sharing that Andrews told him the cough was due to her reaction to the Lysol. Stephens replied, stating "Christy has so many 'ailments' its [sic] just crazy." Pl.'s Resp., R. 48-2, Page ID #590. Approximately one hour later, Simpson compiled a list of 12 employees that had requested to work from home and their respective reasons for doing so. Andrews was listed, and Simpson noted "compromised immune system" next to her name. *Id.* at Page ID #595. Once Simpson received Andrews' doctor's note, she e-mailed a list of five employees that had submitted doctor's notes listing "valid concerns" relating to COVID-19 to Tri Star's CEO, Lou Taylor. *Id.* at Page ID #600. Three days later, on March 20, 2020, Andrews received a phone call from Simpson that Andrews was being laid off as part of a RIF. Tri Star claims that its 2020 RIF laid off all nonessential employees "who had requested to work from home for any reason." Def.'s SUMF, R. 40, Page ID #273.

Following this unanticipated layoff, Andrews exhausted her administrative remedies and filed the instant lawsuit, alleging that Tri Star failed to accommodate her asthma and discriminated against her on the basis of her disability. The complaint identified Andrews' disability as "asthma and/or pulmonary issues involving obstruction of her airway." Compl., R. 1, Page ID #5.

## II.  ANALYSIS

Both the district court and the majority opinion cursorily dispose of Andrews' discrimination claims by narrowly construing the ADAAA's definition of "disability" to hold that Andrews' asthma does not qualify as a disability. The majority insists that, because Andrews

attends exercise classes, her breathing is not significantly restricted. But this holding relies upon the assumption that a disabled individual cannot find ways to cope with his or her disability and still be considered "disabled," which ignores the ADAAA's express instruction to reject any consideration of mitigating measures and to broadly construe what constitutes a disability.

## A. The 2008 ADA Amendments

Under the ADA, one of the three ways in which the term "disability" is defined involves a showing of "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The ADAAA was enacted on September 25, 2008, and became effective on January 1, 2009, broadening the ADA's definition of "disability" in several ways. *See* Pub. L. No. 110–325, 122 Stat. 3553. Prior to the passage of the ADAAA, individuals, such as Andrews, who took self-help measures to improve their conditions were frequently deemed not "covered" by the protections of the ADA. *See, e.g.*, *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 488–89 (1999) (holding that mitigating measures must be considered in the determination of whether a plaintiff has a disability); *Murphy v. UPS, Inc.*, 527 U.S. 516, 521 (1999) (holding that "the determination of petitioner's disability is made with reference to the mitigating measures he employs" and thus affirming lower court's conclusion that plaintiff was not disabled where his blood pressure medication remedied the majority of his limitations); *Littleton v. Wal-Mart Stores, Inc.*, 231 F. App'x 874, 877 (11th Cir. 2007) (finding plaintiff with intellectual disability was not disabled where he graduated high school and could drive a car); *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 724 (8th Cir. 2002) (finding plaintiff with diabetes was not disabled where he treated his diabetes with insulin and other medications). Accordingly, Congress took action to overturn this narrow judicial interpretation of the ADA that resulted in serious conditions, such as epilepsy, diabetes, cancer, bipolar disorder, depression, and asthma, being categorically excluded as

"disabilities" under the ADA. In overruling this prior case law, Congress intended to shift the focus in ADA litigation from whether an individual's impairment substantially limits a major life activity to the more important questions of whether covered entities have complied with the ADA and whether discrimination has actually occurred. *See Milholland v. Sumner Cnty. Bd. of Educ.*, 569 F.3d 562, 566 (6th Cir. 2009) ("Congress enacted the ADA Amendments Act in order to 'reinstat[e] a broad scope of protection to be available under the ADA.'" (quotation omitted)).

Taking some of the relevant changes in turn, the ADAAA clarified the definition of "substantially limits" by prohibiting the courts from considering the "ameliorative effects of mitigating measures" when assessing whether an impairment substantially limits a major life activity.[2] *See* 42 U.S.C. § 12102(4)(E). In addition, whether a disability may be episodic in nature or occur infrequently is no longer relevant to determining whether the impairment substantially limits a major life activity. *Id.* § 12102(4)(D). In other words, it does not matter that Andrews' asthma flared up only occasionally, and the ameliorative effects of Andrews' inhaler should not be considered when determining whether her asthma is a disability.

Overall, the amendments reaffirmed that the "substantial limitation" standard "is not meant to be a demanding" one. 29 C.F.R. § 1630.2(j)(i). And the statute mandates that the definition of disability should "be construed in favor of broad coverage of individuals." 42 U.S.C. § 12102(4)(A). *See Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 299 (6th Cir. 2019) ("Under the 2008 amendments to the ADA, Congress made clear that the definitions of both a 'disabled person' and 'substantially limits' are to be construed broadly in favor of expansive coverage." (quoting 42 U.S.C. § 12102(4)(A), (B))). To determine whether a disability

---

[2] The one exception to this rule is the use of "ordinary eyeglasses or contact lenses." *Id.* § 12102(E)(i)(I).

substantially limits major life activities, courts are now expected to compare the person claiming to have a disability to most people in the general population. *See id.*; *see also Hostettler v. Coll. of Wooster*, 895 F.3d 844, 853–54 (6th Cir. 2018). This comparison does not demand scientific or medical proof, nor should it involve an extensive analysis. 29 C.F.R. § 1630.2(j)(v).

### B. Asthma as a Disability

The majority effectively ignores the ADAAA's 2008 changes to the definition of disability. Instead, the outcome in this case mirrors the outdated case law that Congress expressly overturned. But the ADAAA alters how we should assess whether Andrews' asthma constitutes a disability, inasmuch as asthma is a transitory ailment that can be controlled with mitigating measures. *Cf. Morrissey*, 946 F.3d at 299 (holding that pre-2008 ADA cases are not good law because the 2008 Amendments "invalidate[d] those decisions . . . to restore the intent and protections of the Americans with Disabilities Act" (citations omitted)). Prior to the passage of the ADAAA, Andrews' asthma likely would *not* have constituted a disability because she is essentially able to function normally with the use of her inhaler. *See, e.g.*, *Milton v. Tex. Dep't Crim. Just.*, 707 F.3d 570, 574 (5th Cir. 2013) (applying pre-ADA Amendments law to determine that plaintiff's asthma, which she could "mitigate" and did not "consistently restrict[] her ability to breathe," did not constitute a disability under the ADA); *Minnix v. City of Chillicothe*, No. 98-4285, 2000 WL 191828, at *2 (6th Cir. 2000) (finding no disability where asthma was not "as severe, long term, or permanent" as to be substantially limiting because in the absence of diesel fumes plaintiff was able to breathe normally); *Gaddy v. Four B Corp.*, 953 F. Supp. 331, 337 (D. Kan. 1997) (finding that a person was not substantially limited in her ability to breathe where she was able to control her asthma with an inhaler or a breathing machine).

However, post-ADAAA, courts may no longer consider mitigating measures when assessing whether an individual has a disability. *Grose v. Mnuchin*, No. 18-5746, 2019 WL 7603383, at *5 (6th Cir. Sept. 27, 2019) (recognizing that post-ADAAA, "a disability determination is made 'without regard to the ameliorative effects of mitigating measures'" (quotation omitted)). The appropriate inquiry is instead whether Andrews' asthma would substantially limit a major life activity when active—without the consideration of the relief she gets from using her inhaler and other medications. *See* 42 U.S.C. § 12102(4)(D), (E); *see also Hostettler*, 895 F.3d at 854.

This inquiry is not a difficult one. During Andrews' deposition, she testified that she was diagnosed with asthma during high school. The parties agree that her asthma triggers include the wind blowing in her face, being in cold temperatures, high humidity, stress, strong smells, perfumes, synthetic fog, and aerosol cleaning products. *See* Def.'s Resp. to Pl.'s Statement of Facts, R. 62, Page ID #1021. Each of these triggers inhibits Andrews' ability to breathe. When asked if she perceived herself as disabled due to her asthma, Andrews stated that she "has to deal with [her asthma] every day and try not to let it get in [her] way," and that it was "debilitating sometimes." Andrews Dep., R. 62-4, Page ID #1067. Indeed, Tri Star does not dispute that Andrews must use her inhaler regularly. Def.'s Resp. to Pl.'s Statement of Facts, R. 62, Page ID #1020. Andrews elaborated that her asthma can culminate in bronchitis or pneumonia, resulting in shortness of breath even if she simply gets up and tries to move around. Overall, Andrews testified that "there are a lot of things that [she] would like to do that [she] choose[s] not to do because [she] know[s] it would be a problem" due to her asthma. Andrews Dep., R. 62-4, Page ID #1068. Without her inhaler and her additional medications, Andrews testified that her asthma would not be well-controlled.

Based on Andrews' testimony, a jury could reasonably find that, when her asthma is active, it substantially limits her breathing compared to an average person. Thus, for purposes of summary judgment, Andrews has created a material dispute of fact as to her disability status. To combat this simple conclusion, the majority ignores Congress' amendments to the ADA by holding that Andrews' "transient" and "isolated" asthma does not qualify as a disability. Maj. Op. at 8. This outdated analysis is no longer permissible—the fact that a disability occurs only in response to stimuli or can be controlled with mitigation measures is no longer relevant to the disability inquiry. *See, e.g.*, *Murtha v. N.Y. Gaming Comm'n*, No. 17-civ-10040, 2019 WL 4450687, at *10 n.7 (S.D.N.Y. Sept. 17, 2019) (recognizing that asthma cases decided pre-ADAAA are no longer applicable and holding that plaintiff adequately pleaded his asthma substantially affected his ability to breathe); *Kennedy v. Parkview Baptist Sch., Inc.*, No. 13-478-SCR, 2014 WL 7366256, at *14 (M.D. La. Dec. 24, 2014) (noting the lowered standard to show disability status after the ADAAA, and holding that the plaintiff's deposition testimony "would be sufficient for a reasonable trier of fact to find that the asthma impairment, in its active state, substantially limited the plaintiff's breathing and respiratory functions as compared to most people in the general population"); *Witt v. Bristol Farms*, No. 21-cv-00411-BAS-AGS, 2021 WL 5203297, at *4 (S.D. Cal. Nov. 9, 2021) ("[U]nder the broad coverage of the ADA Amendments Act and reading the facts alleged in the light most favorable to [the plaintiff], . . . [plaintiff's] chronic asthma substantially limits her breathing."); *cf. Harrison v. Soave Enters., LLC*, 826 F. App'x 517, 525 (6th Cir. 2020) (where plaintiff's previously torn ACL prevented her from kneeling, finding a genuine dispute as to whether she was actually disabled because the general population can kneel without difficulty).

No. 23-5700, *Andrews v. Tri Star Sports & Ent. Grp.*

The majority compounds its error by highlighting Andrews' ability to engage in physical activities, such as CrossFit and cheerleading.[3] In other words, the majority implies that Andrews cannot possibly claim to be disabled due to her asthma and, at the same time, maintain an active lifestyle. This conclusion is wrong for several reasons. Importantly, the record reflects that Andrews engages in these activities only with the assistance of her inhaler, which we may not consider in determining whether she has a disability. 42 U.S.C. § 12102(4)(E)(i); *Murtha*, 2019 WL 4450687, at *10 n.7 ("The Court notes that *Muller* and *Heilweil*, in drawing their conclusions that the plaintiffs were not disabled, both considered the fact that the plaintiffs' use of asthma medication substantially mitigated their symptoms. Consideration of such a factor is no longer permissible after Congress enacted the [ADAAA]."). Instead of properly evaluating whether Andrews would have substantial limitations during exercise if she *did not use* her inhaler or other medications, the majority follows the district court's perfunctory conclusion that Andrews did not adequately cite to the record to support that her active lifestyle is possible only due to her medications. Yet even a quick review of the undisputed facts in this case shows that Andrews always uses her rescue inhaler prior to exercising to keep her asthma controlled.[4] By refusing to

---

[3] In its list of physical activities that Andrews can engage in, the majority includes several irrelevant, non-physical activities to make its erroneous point that Andrews does not have limitations. For example, whether Andrews travels or enjoys metal detecting as a hobby does not bear upon whether her breathing is substantially limited when her asthma is active.

[4] What's more, the majority is plainly incorrect in its determination that it cannot analyze Andrews' argument that she could only exercise when using her inhaler because the district court did not consider such an argument. *See* Maj. Op., at 9 n.4 ("Because we do not entertain factual recitations not presented to the district court, we will not entertain Andrews's mitigation argument."). Although the district court stated that it was "reluctant" to consider Andrews' arguments regarding mitigation measures, it ruled on the merits and nonetheless concluded that "Plaintiff's reliance on [her inhaler] to reduce the effects of her asthma is not sufficient to support her assertion that her asthma is a disability." Memo. Op., R. 76, Page ID #1195 n.13. Contrary to the majority's holding, the district court *did* consider Andrews' mitigation argument.

- 19 -

consider the effects of Andrews' asthma without regard to mitigating measures, the majority's opinion incorrectly postures its analysis within the ambit of pre-2008 case law, which Congress has overruled.

Finally, in emphasizing Andrews' ability to attend exercise classes, the majority relies on the long-outdated presumption that someone who is "truly" disabled cannot engage in strenuous activities. Simply because Andrews has found ways to cope with her asthma does not bar her from being considered disabled within the purview of the ADA. Indeed, we would not hold that a plaintiff with a prosthetic leg who claims he is substantially limited in his ability to walk could not be considered disabled if he attended workout classes.[5] That would be a nonsensical interpretation of the ADA. Although there are certainly circumstances in which asthma will not "substantially limit" a major life activity, in this case, there is at least sufficient evidence that a reasonable trier of fact could conclude that, when Andrews' asthma was active, she was substantially limited in her ability to breathe compared to most people in the general population.

### C. Additional Considerations

Because Andrews has met her burden of showing that she is disabled for purposes of summary judgment, it is worth briefly analyzing Andrews' strongest ADA claim—Tri Star's failure to accommodate her or engage in the interactive process. Employers must reasonably accommodate disabled employees unless the employer can show that the requested accommodation would cause it undue hardship. 42 U.S.C. § 12112(a), (b)(5)(A); *see also Yanick*

---

[5] To provide another example, as Congress emphasized in passing the ADAAA, "[w]hen considering the condition, manner, or duration in which an individual with a specific learning disability performs a major life activity, it is critical to reject the assumption that an individual who has performed well academically cannot be substantially limited in activities such as learning, reading, writing, thinking, or speaking." Managers Statement, 154 Cong. Rec. at S8842 (daily ed. Sept. 16, 2008).

*v. Kroger Co. of Mich.*, No. 23-1439, 2024 WL 1856680, at *3 (6th Cir. Apr. 29, 2024) (citing *EEOC v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015) (en banc)). Because Tri Star admitted that it did not engage in any interactive process, Andrews has created a genuine dispute of material fact as related to her failure to accommodate claim, warranting reversal of the district court's grant of summary judgment.

Tri Star solicited work-from-home requests, received such a request from Andrews with an attached doctor's note, and then terminated her without further communication. By sending a written request to work from home accompanied by a doctor's note, Andrews triggered Tri Star's obligation to engage in a good faith interactive process. *See Mobley v. Miami Valley Hosp.*, 603 F. App'x 405, 413 (6th Cir. 2015) ("[O]ur case law considers letters from physicians sufficient to notify an employer of the need to accommodate a disability."); *Yanick*, 2024 WL 1856680, at *4 (rather than a "bright-line rule" requiring the employee to use the word "accommodation," this Court "more generally assesses whether the employee communicated a need for an adjustment at work because of a disability"). And Andrews' requested accommodation could be viewed by a jury as objectively reasonable, as Tri Star was soliciting such requests, and Andrews had worked from home successfully in the past. After Andrews made her request, she was entitled to an interactive process built around "communication and good-faith exploration of possible accommodations" by both the employee and employer. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007).

Had Tri Star attempted to engage in the interactive process, as it was obligated to, the parties may have found a plethora of alternative options that would have allowed Andrews to perform in-person work throughout the duration of the pandemic. *Cf. King v. Steward Trumbull Mem. Hosp., Inc.*, 30 F.4th 551, 564 (6th Cir. 2022) (holding that employers must participate in

the interactive process in "good faith" and conduct an "individualized inquiry" into possible accommodations); *Ford Motor Co.*, 782 F.3d at 766 (noting that the employer met with the plaintiff multiple times, sought clarification on her telecommuting request, and identified two alternative accommodations); *Blanchet v. Charter Comm'ns, LLC*, 27 F.4th 1221, 1232 (6th Cir. 2022) (holding that an employer cannot "use its failure to engage in the interactive process to argue that [the employee's] proposed accommodation was unreasonable"). For example, Andrews may have agreed to continue working in-person if the office agreed to implement a policy of using disinfectant wipes instead of aerosol cleaning spray. Although Andrews may have ultimately insisted on an accommodation of working remotely, Tri Star did not engage in any form of a conversation that could have led them to that conclusion.

### III. CONCLUSION

Viewing the evidence in the light most favorable to Andrews, there is a genuine dispute of material fact as to whether she is disabled within the meaning of the ADAAA. *See* 42 U.S.C. § 12102(1)(A). The ADAAA plainly instructs us to look at Andrews' asthma in its active state without regard to her inhaler or medications. A jury could reasonably find that, when Andrews' asthma is active and untreated, she is substantially limited in her ability to breathe. In concluding otherwise, the majority ignores Congress' explicit intention in passing the ADAAA and chips away at the progress that the courts have subsequently made in broadening the reach of the law to encompass those with episodic impairments. For the reasons set forth above, I would reverse the district court's grant of summary judgment to Tri Star and therefore respectfully dissent.